**TEXAS INSTRUMENTS, INC., Plaintiff,**

**v.**

**U. S. CUSTOMS SERVICE et al., Defendants.**

**Civ. A. No. 79–1372.**

United States District Court,
District of Columbia.

Oct. 21, 1979.

Frederick L. Ikenson, Washington, D. C., for plaintiff.

Edith S. Marshall, Special Asst. U. S. Atty., United States District Court, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court are Cross-Motions for Summary Judgment in a FOIA action brought by Texas Instruments Incorporated (TII) against the United States Customs Service (Customs). This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and Rule 56 of the Federal Rules of Civil Procedure.

The material facts of this case are not in dispute. TII is an importer of semiconductor electronic devices. In 1971 the Customs Service granted TII an exception to the individual country of origin marking requirement, pursuant to 19 U.S.C. § 1304. Under the exception, TII was required to package the devices in conspicuously marked bulk containers indicating the country of origin. TII also domestically produces its own devices, which are not subject to the bulk marking requirement.

Since 1975, there has been serious dispute about whether TII has complied with the marking agreement. If TII is ultimately found to be in violation, the agreement will be rescinded, and a 10% ad valorem tax will be assessed on shipments of semiconductor devices that entered the country after March of 1971. Otherwise, TII will not be so taxed, and can continue to mark bulk containers, rather than individual packages. In late 1975, Customs launched into a wideranging investigation of TII's packaging. Customs sent out a questionnaire to corporations that purchased the devices from TII; TII has challenged the integrity and merit of the questionnaire. In September of 1977, Customs found TII in violation of the marking agreement. TII is currently seeking reversal within the Department of Treasury appeals process.

In October of 1978, TII filed an FOIA request, which is the subject of this dispute. TII requested copies of "all written communications and documents including letters, cables, memoranda, reports, questionnaires, questionnaire responses, handwritten notes, statements, magnetic tapes, cassettes, and the like, which have been submitted or transmitted to, or prepared by employees or officials of the United States Customs Service and/or the Treasury Department which in any way relate or pertain to the Customs Service's investigation into TII's compliance with the country of origin marking requirements." TII excepted from this request one memo which had already been the subject of FOIA litigation.

Since the beginning of 1979, TII has submitted 293 FOIA requests. Those requests differed from the one quoted above by limiting the information requested to that "upon which the Houston District Director based, in whole or in part, his determination that the semiconductor devices imported by TII in a particular import entry failed the not more than 1% test issued by the OR&R rulings." These FOIA requests are not the subject of this dispute. On March 26, 1979, Defendants released all information used by the Houston District Director in making his determination except for three investigative reports, which he claimed were exempt as investigative records compiled for law

enforcement purposes pursuant to 5 U.S.C. § 552(b)(7)(A). On April 30, 1979, TII filed an administrative appeal from that partial FOIA denial. That appeal is pending.

On March 12, 1979, TII appealed a denial *sub silentia* of the broader FOIA request. On May 1, 1979, Customs responded to this appeal. Some documents were made available in their entirety, some were partially released, and others remain completely undisclosed. Moreover, the May 1, 1979 Customs memo did not list some of the documents requested by TII. There are three categories of material subject to this FOIA dispute, to wit: (1) those documents not listed in Defendants' May 1 reply; (2) those documents or parts thereof allegedly exempt from disclosure under 5 U.S.C. § 552(b)(5); and (3) those parts of documents allegedly exempt under § 552(b)(2).

*Category # 1*

■ Plaintiff claims that Defendant has not justified its failure to release the unlisted documents. Defendants admit that the documents were neither listed nor released, but asserts that Customs officials felt those documents (located in the Houston District Director's Office rather than in Customs Headquarters) would be more appropriately produced in response to the subsequent FOIA requests. Defendants assert that in the course of Customs' current review of Plaintiff's administrative appeal of the subsequent FOIA requests, the documents in question are being reviewed. Thus, Defendant concludes that Plaintiff's claim regarding the unlisted documents is not yet ripe for adjudication.

Defendant has had ample time to process and determine the status of the unlisted documents. Continued delay, even if not done in bad faith, is unwarranted.

*Category # 2*

Plaintiff claims that the subject of the dispute is factual; namely, whether TII has complied with the "not more than one per-

cent test." Consequently, Plaintiff asserts, all of the materials subject to this FOIA claim are factual, and are therefore not exempt under § 552(b)(5). TII therefore requests the information gathered in the investigation, the analyses of that information, the factual findings made and the analyses of those findings.

■ The sole issue regarding the materials allegedly exempt under § 552(b)(5) is whether they are "deliberative" or "factual" in nature. It is clear that, under the law of this Circuit, the raw data gathered in the investigation is "factual" and must be released.[1] It is equally clear, however, that analyses of that information, the factual findings made, and analyses of those findings are all part of the "deliberative process" and therefore fall within Exemption 5.[2] There is no evidence suggesting that the raw data is not reasonably segregable, pursuant to § 552(b).

It is apparent that much of the raw data has already been released by Customs to TII. The Court finds that all of the material deleted from the partially disclosed documents was exempt under § 552(b)(5). Furthermore, many of the listed but undisclosed documents contain purely deliberative information. One document and drafts thereof contain the facts of a particular study, which must be released to Plaintiff.

*Category # 3*

■ Defendants deleted some information from the released documents, claiming an exemption under § 552(b)(2). The deleted materials were either internal report numbers or access numbers which related solely to the practices of the Customs Service. That information had no value to Plaintiff. Regardless, the numbers relate solely to Customs Service practices, and can be utilized to obtain information only by agency personnel functioning within the

---

1. See *Mead Data Central, Inc. v. USAF*, 188 U.S.App.D.C. 51, 575 F.2d 932 (D.C.Cir. 1978); *Mead Data Central, Inc. v. USAF*, 184 U.S.App. D.C. 350, 566 F.2d 242 (D.C.Cir. 1977).

2. *Montrose Chem. Co. v. Train*, 160 U.S.App. D.C. 270, 491 F.2d 63 (D.C.Cir. 1974). *Mead Data Central, Inc., supra.*

agency. As such, it falls squarely within Exemption 2.[3]

Accordingly, it is by the Court this 12th day of October, 1979,

ORDERED, that Defendants release to Plaintiff the following:

(1) All the raw data contained in a memorandum from the Commissioner of Customs to the Assistant Secretary dated June 22, 1978 and all of the data contained in all drafts thereof;

(2) All the raw data derived from Customs' investigation of TII not already disclosed, including material from the documents not listed in the Fox exhibit. Defendants are ordered to process and release the information as expeditiously as possible, but in no event later than December 15, 1979; and it is

FURTHER ORDERED, that in all other respects Plaintiff's Motion for Summary Judgment be and is hereby DENIED; and it is

FURTHER ORDERED, that Defendants' Motion for Summary Judgment be and hereby is GRANTED.

---

3. *USAF v. Rose*, 425 U.S. 352, 369, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1969).