**Manuel Mendendez DOCAL, Plaintiff,**

v.

**Peter BENNSINGER, Director, Drug Enforcement Administration; Benjamin Civiletti, Attorney General of the U. S., Defendants.**

**Civ. No. 80–1114.**

United States District Court,
M. D. Pennsylvania.

Nov. 12, 1981.

40

Manuel Mendendez Docal, pro se.

Harry Nagle, Asst. U. S. Atty., Lewisburg, Pa., for defendants.

MEMORANDUM AND ORDER

CONABOY, District Judge.

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976). The Plaintiff, presently incarcerated in the United States Penitentiary at

Lewisburg, Pennsylvania, had submitted a request under the FOIA to the Drug Enforcement Administration (DEA) for production of certain documents compiled in the course of the DEA's investigation of Plaintiff's "illicit drug activities". When such documents were not forthcoming, Plaintiff filed the instant action seeking a court order for the production thereof. By Memorandum and Order filed July 8, 1981, this Court denied the Defendant's motion to dismiss and directed the parties to expand the record in certain respects. Pertinent to our present inquiry, we ordered the Defendant to prepare and submit for the Court's *in camera* review, a *Vaughn* -type index,[1] providing specific justifications for those documents, or those portions of documents, which were not released to the Plaintiff.

In response to our Order, on October 5, 1981, the Defendant filed the *Vaughn* Index along with copies of the documents referred to therein. Also included in this response was an affidavit of Thomas H. Wingate, Jr., a Freedom of Information Specialist assigned to the DEA. In this public affidavit, he noted that 614 pages of material had been identified as pertaining to the Plaintiff's request, all of which were located in the DEA's Investigative Reporting and Filing System,[2] which is exempt from the access provisions of the Privacy Act. 5 U.S.C. § 552a(j)(2). Of the 614 pages of pertinent documents, 342 pages were released to the Plaintiff with excisions pursuant to various statutory exemptions under the FOIA. The remaining 272 pages were withheld in their entirety pursuant to these same exemptions. The exemptions claimed by the Defendant in this action are: 5 U.S.C. § 552(b)(2),[3] (b)(3),[4] (b)(5),[5] (b)(7)(A), (b)(7)(C), (b)(7)(E), (b)(7)(D), (b)(7)(F).[6] For the reasons set forth below, we hold that all of the information withheld by the Defendant pertained to matters within the scope of one or more of these statutory exceptions

1. The purpose of this Index is to "correlate statements made in the Government's refusal justification with the actual portions of the document." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1977). The *Vaughn* procedures have been adopted in our Circuit. See, *Lame v. United States Dept. of Justice*, 654 F.2d 917, 921 (3d Cir. 1981); *Ferri v. Bell*, 645 F.2d 1213, 1222 (3d Cir. 1981); *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969 (3d Cir. 1981).

2. It was also revealed that after the initial processing of the instant request, another review of the documents uncovered 515 pages of material having nothing to do with the Plaintiff or with his co-conspirators within the context of the Plaintiff's criminal indictment. Approximately 353 pages of documents were concerned with and/or related to telephone subscriber information about third parties who had no relationship with the Plaintiff or his criminal case. The other 162 pages were cables, personal histories and reports of investigation unrelated to the requester or his case. These pages were not released to the Plaintiff and were subsequently taken out of the request file. Thus, the total pages of pertinent material is 614 instead of 1,129. (Affidavit of Thomas H. Wingate, Jr., ¶ 12) (hereinafter "Affidavit"). This unrelated third party material has been offered for the Court's *in camera* review. While these documents are not actually within the scope of Plaintiff's request, nevertheless, after inspecting this material, we believe that it

would be exempt in its entirety under section 552(b)(7)(C), discussed *infra*.

3. matters "related solely to the internal personnel rules and practices of an agency."

4. matters "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."

5. "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

6. "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source, and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel."

and, therefore, Plaintiff is not entitled, under the FOIA, to release of any additional materials.

 In considering the propriety of these claims of exemption for the documents in question, we are mindful of the Congressional purpose in enacting the FOIA, *viz.*, to establish a general philosophy of full agency disclosure unless the information is exempted under clearly delineated statutory language. *GTE Sylvania, Inc. v. Consumers Union of United States*, 445 U.S. 375, 385, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Furthermore, in a FOIA case, the government agency opposing divulgence of the information sought bears the burden of establishing that the material in issue falls with one of the nine exclusive statutory exemptions of section 552(b). *Lame v. United States Department of Justice*, 654 F.2d 917, 921 (3d Cir. 1981); *Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir. 1981). Thus, "[t]he overall design of the Act was to balance the interests of public access with the necessity of retaining confidential matters of agencies from public view." *Smith v. Flaherty*, 465 F.Supp. 815, 819 (M.D.Pa. 1978). It is therefore in this context that the statutory exemptions asserted by the Defendant in support of its withholding or excision of the pertinent documents must be examined. In doing so, we will briefly discuss each claimed exemption *seriatim* and the material withheld thereunder.[7]

### A. Exemption (b)(2)

 This statutory provision exempts from disclosure matters "related solely to the internal personnel rules and practices of an agency". The Supreme Court has declared that this exemption relates to "routine matters" with "merely internal signifi-

cance" in which "the public could not reasonably be expected to have an interest." *Department of Air Force v. Rose*, 425 U.S. 352, 369–70, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976); *Ferri v. Bell, supra*, 645 F.2d at 1224. See also, *Vaughn v. Rosen*, 523 F.2d 1136, 1141 (D.C.Cir.1975) (exempts from disclosure routine "housekeeping" matters in which it can be presumed the public lacks any substantial interest); *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir. 1977).

In the instant case, the (b)(2) exemption was utilized to delete "violator ·identifiers and other administrative markings which are used for the purpose of storing, locating, retrieving or transmitting DEA documents internally." (Affidavit, ¶ 15a). The most commonly used (b)(2) identifiers in the materials were: (1) G–DEP numbers, which are assigned to all DEA cases and which indicate the classification of the violator, the type and amount of suspected drug involved and the suspected location of criminal activity; and (2) NADDIS numbers, which are 4 to 6 digit numbers assigned to drug violators and suspected drug violators known to the DEA. Each number is unique and is assigned to only one violator or suspected violator within the DEA NADDIS system, an exempt system of records. (Affidavit, ¶ 15a (1) and (2)). Also excised under this exemption and under (b)(7)(A), discussed *infra*, were certain items on the Personal History Reports relating to drug criteria symbols and violator classifications. These internal codes are used by the DEA to identify particular narcotics investigations. They refer to the priority of investigations, the type of criminal activities, geographical areas, types of controlled substances involved, violator rating, and agencies involved in the investigation. (Affidavit, ¶ 15a).

---

**7.** A review of *Vaughn* Index and of the *in camera* material itself indicates that there were eleven (11) types of documents in Plaintiff's DEA file. They were: (1) Reports of Investigations (DEA Form 6a), making up by far the majority of the pages in the file; (2) Defendant Disposition Statistical Reports (DEA Form 210); (3) Personal History Reports (DEA Form 202); (4) Wanted Person Reports (DEA Form 145); (5) Reports of Non-Drug Property Collected, Purchased or Seized (DEA Form 7a); (6) Reports of Drug Property Collected, Purchased or Seized (DEA Form 7); (7) FBI "Rap Sheet" dated 3/9/78; (8) Intelligence Profiles; (9) Telephone Traffic Sheets; (10) Intra-agency office cables; and (11) Notes of DEA agents.

After reviewing the excised documents *in camera*, this Court is convinced that the (b)(2) exemption was properly applied in this instance: Numerous decisions support the withholding of such information by the government agency. In *Texas Instruments, Inc. v. U.S. Customs Service*, 479 F.Supp. 404 (D.D.C.1979), the Defendants deleted information concerning internal report numbers and access numbers relating solely to the practices of the Customs Service. In sustaining the agency's claim of a (b)(2) exemption, the Court observed:

> That information had no value to Plaintiff. Regardless, the numbers relate solely to Customs Service practices, and can be utilized to obtain information only by agency personnel functioning within the agency. As such, it falls squarely within Exemption 2. *Id.* at 406–07 (footnote omitted).

Similarly, in *Lesar v. United States Dept. of Justice*, 636 F.2d 472 (D.C.Cir.1980), the government agency utilized this exemption to delete symbols used to refer to FBI informants in FBI documents and records. In upholding the claim as to these informant codes, the Court recognized that such "markings" bear no relation to the substantive contents of the records released and, thus, they were a "matter of internal significance in which the public has no substantial interest." *Id.* at 485–86. *Accord, Maroscia v. Levi, supra* (deletion of administrative markings such as file numbers, initials, signatures and mail routing stamps proper under Exemption 2); *Smith v. Flaherty, supra*, 465 F.Supp. at 822; *Ferguson v. Kelley*, 448 F.Supp. 919, 921 (N.D.Ill.1977); *Flower v. Federal Bureau of Investigation*, 448 F.Supp. 567, 571 (W.D.Tex.1978); *Shaver v. Bell*, 433 F.Supp. 438, 439 (N.D.Ga. 1977); see generally, 1 Davis, *Administrative Law Treatise*, § 5.30 (2d ed. 1978).

It is the view of this Court that the administrative markings and codes in issue clearly relate to internal matters to which neither the Plaintiff nor the public can claim a substantial interest. Therefore, we hold that the deletion of this material from the documents released to Plaintiff was proper under 5 U.S.C. § 552(b)(2).[8]

### B. Exemption (b)(3)

■ Section 552(b)(3) exempts from disclosure information which is "specifically exempted from disclosure by statute..." This section was applied to withhold written accounts of phone calls monitored pursuant to several wire intercepts under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 (1976). This material was contained in DEA Reports of Investigations and in portions of the DEA Personal History forms.

In order to qualify as an exempted statute under (b)(3) the provision in question must "require that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or be one that "establishes particular criteria for withholding or refers to particular types of matters to be withheld." In the case of Title III, we are satisfied that this standard is met. The Act itself sets forth specific prohibitions against disclosure: § 2511(1)(c), imposing criminal sanctions, and § 2520, imposing civil sanctions, for the disclosure of the contents of oral communications intercepted in violation of the specific procedures established in §§ 2516, 2518. Furthermore, §§ 2511(2), 2515, and 2517 set forth the particular conditions under which disclosure can be made. In view of this detailed legislative framework, establishing precise procedures for the interception and disclosure of oral communications, we find that the information obtained pursuant to the Title III wire intercepts is

8. Additionally, we find that the Government would be justified in withholding this material under (b)(7)(A), which exempts "investigatory records" that would "interfere with law enforcement proceedings." Since these violator identifier and drug codes are an integral part of the DEA's investigative process, we believe that the Government is correct in its assertion that "disclosure of the codes could thwart the Drug Enforcement Administration's investigative and enforcement efforts." (Affidavit, ¶ 15a). See, *Nunez v. Drug Enforcement Administration*, 497 F.Supp. 209, 211 n. 4 (S.D.N. Y.1980) (DEA's refusal to disclose "violator identifier codes" justified under (7)(A) exemption).

exempt under 5 U.S.C. § 552(b)(3).[9] See, *Providence Journal Co. v. Federal Bureau of Investigation*, 460 F.Supp. 762, 768–69 (D.R.I.1978), *rev'd on other grounds*, 602 F.2d 1010 (1st Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980) (contents of electronic surveillance conducted under Title III protected under Exemption 3).

C. *Exemption (b)(5)*

▮ Under this statutory provision, an agency is entitled to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Under this section, it is well established that an executive privilege exists which entitles an agency to withhold from disclosure intragovernmental documents reflecting advisory opinions, recommendations, and deliberations comprising part of the process by which agency decisions are formulated. *United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir. 1973); see also, *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), *McClelland v. Andrus*, 606 F.2d 1278 (D.C.Cir.1979); *Joseph Horne Co. v. NLRB*, 455 F.Supp. 1383 (W.D.Pa.1978). The purpose of this exception is to protect the consultative functions of government by furthering open and frank discussions within and between agencies of proposed

administrative action. *Cooper v. Department of the Navy*, 558 F.2d 274, 276–77 (5th Cir. 1977); *Sterling Drug, Inc. v. Harris*, 488 F.Supp. 1019, 1024 (S.D.N.Y.1980). Comparatively little material has been withheld by the Defendant pursuant to this exemption,[10] and the Court has reviewed all of it *in camera*. After doing so, we find the excised material to be "predecisional" and "recommendatory" in nature and, thus, clearly within the ambit of Exemption 5. See, *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 866–68 (D.C.Cir.1980). Therefore we hold that the Defendant's reliance on section (b)(5) in deleting this information from that released to the Plaintiff was proper.

D. *Exemption (b)(7)(A)*

▮ Section (b)(7)(A) exempts from disclosure "investigatory records compiled for law enforcement purposes" [11] when production of such records would "interfere with enforcement proceedings". It is well recognized that, pursuant to this exemption, an agency may withhold documents stemming from an ongoing criminal investigation if disclosure would harm or interfere [12] with a subsequent enforcement proceeding. *Murphy v. Federal Bureau of Investigation*, 490 F.Supp. 1138, 1142 (D.D.C.1980); see, *NLRB v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

---

**9.** After reviewing these materials *in camera*, the Court is of the opinion that this intercepted material would also be exempt under (b)(7)(C), discussed *infra*, which guards against the disclosure of "investigatory records" constituting an "unwarranted invasion of personal privacy." See, *Providence Journal Co. v. Federal Bureau of Investigation*, 602 F.2d 1010, 1013–14 (1st Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980).

**10.** This exemption was utilized only eight times to delete relatively short paragraphs in the DEA Reports of Investigations (DEA Form 6a).

**11.** It is not contested that the records requested by Docal were investigatory records compiled for law enforcement purposes under § 552(b)(7) as well as records compiled by a criminal law enforcement authority in the course of a criminal investigation. § 552(b)(7)(D).

**12.** "Interference" under the terms of the statute encompasses a wide range of concerns. Grounds which have been repeatedly acknowledged by the courts include fears of disclosure of: (1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act, (12) attorney work product, (13) the methods of surveillance, (14) subjects of surveillance. *Kanter v. Internal Revenue Service*, 433 F.Supp. 812, 822 n. 18 (N.D.Ill. 1977). See, *New England Medical Center Hospital v. NLRB*, 548 F.2d 377 (1st Cir. 1976); *National Public Radio v. Bell*, 431 F.Supp. 509 (D.D.C.1977); *Electric-flex Co. v. NLRB*, 412 F.Supp. 698 (N.D.Ill.1976).

■ In the instant case the Defendant has applied this exemption to "investigatory records relating to active law enforcement efforts to apprehend several DEA fugitives still at large." (Affidavit, ¶ 15d). The Court has had an opportunity to examine these "fugitive status reports" *in camera*, and we find that the Defendant has properly claimed the exemption listed for these records. The materials in question are sensitive documents, the disclosure of which could seriously hamper the DEA's present investigative efforts and also jeopardize any subsequent criminal enforcement proceedings against these individuals. See, *Nunez v. Drug Enforcement Administration, supra,* 497 F.Supp. at 211 (DEA properly relied on section (7)(A) in refusing to disclose information concerning its efforts to locate requester's fugitive co-defendants). Therefore, we hold that the nondisclosure of this information by the Defendant was proper under 5 U.S.C. § 552(b)(7)(A).

### E. Exemption (b)(7)(C)

This statutory provision again exempts "investigatory records" but only to the extent that production of such records would "constitute an unwarranted invasion of personal privacy." It is similar in scope to Exemption 6,[13] yet it requires a lesser showing of privacy invasion in order for the agency to prevail. See, *Department of Air Force v. Rose, supra,* 425 U.S. at 379 n. 16, 96 S.Ct. at 1607 n. 16.

■ Exemption 7(C)'s protection of personal privacy is not absolute; it "does not prohibit all disclosures which invade personal privacy, but only disclosure which entail an unwarranted invasion of personal privacy." *Lame v. United States Dept. of Justice, supra,* 654 F.2d at 922. The proper approach for a Court when confronted with a privacy-based exemption such as section 7(C) is a *de novo* balancing test, weighing the privacy interest and the extent to which it is invaded, on the one hand, against the public benefit that would result from disclosure, on the other. *Id.* at 923; *Ferri v. Bell, supra,* 645 F.2d at 1217; *Committee on Masonic Homes of the R. W. Grande Lodge v. NLRB,* 556 F.2d 214, 220 (3d Cir. 1977).[14] In *Lame* and *Ferri,* the Third Circuit adopted the reasoning of the Court in *Lamont v. Department of Justice,* 475 F.Supp. 761 (S.D.N.Y.1979) regarding the purpose of this privacy exemption. Therein it was stated that the 7(C) exemption:

> protects against the disclosure of the identity of individuals where such disclosure would likely cause embarrassment or harassment to the third party, either because sensitive, derogatory, or intimate personal information about him or her is contained in the file or because the person's cooperation with an FBI investigation would itself prove embarrassing. *Id.* at 776–77.

■ In Docal's case, the DEA utilized this exemption to delete "names, addresses, telephone numbers, and other personal identifying data which would reveal the identity and disclose information about persons who were implicated, involved or associated with the Plaintiff. These individuals were either accomplices, conspirators, or innocent third parties. (Affidavit, ¶ 15e). After reviewing a substantial quantity of the excised materials *in camera*,[15] it

---

**13.** 5 U.S.C. § 552(b)(6) provides an exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

**14.** Furthermore, in *Lame,* our Court of Appeals noted that generally it will be necessary for the district court to conduct the balancing test with regard to each document. 654 F.2d at 923. However, we are confident that in formulating this standard, our appellate court initially presumed that there must be, at least, a minimal showing by the Plaintiff of the "public interest" in the requested documents before an individual weighing process must be undertaken. Logically, if no societal benefit is demonstrated by the requester, then only a modicum of privacy invasion in the documents, as a whole, need be shown to justify agency withholding.

**15.** The decision whether to inspect any of the materials *in camera* as well as the scope of any such review is a matter of discretion with the district court. *Lame v. United States Department of Justice, supra,* 654 F.2d at 922.

is apparent to this Court that the level of privacy invasion varies with respect to each item deleted. In some instances, the incursion is relatively minor, being only a birthdate of a third party, while in others, it can be rather severe, being the name of the individual or some personal identifying information. However, we need not determine the precise extent of the privacy interest in each document in view of the fact that the Plaintiff, despite being ordered by this Court to do so,[16] has failed to demonstrate any "public interest" in the information sought. While we are hesitant to conclude that there is only a personal, perhaps bad faith, motivation underlying the Plaintiff's FOIA request, nevertheless, in the face of such silence on his part regarding our previous Order, we can only deem the public interest in disclosure of this information to be, at best, negligible. In light of this conclusion, we hold that the privacy interests in the excised materials, as a whole, are superior and must prevail. Therefore, the withholding of this information by the DEA pursuant to 5 U.S.C. § 552(b)(7)(C) was proper.

### F. Exemption (b)(7)(D)

This statutory provision sets forth the "confidential source" and "confidential information" exemption of the FOIA. The scope of the exemption was examined by our Court of Appeals recently in *Lame v. United States Department of Justice, supra.* Therein the Court observed:

> Unlike the Section 7(C) privacy exemption, the Section 7(D) exemption does not require any balancing. If the information would reveal the identity of a confidential source, or confidential information given only by a confidential source, the information may be withheld without any consideration of the public interest... [17]

Section 7(D) provides two protections. It protects from disclosure: (a) "the identity of a confidential source" and (b) for a criminal law investigation, "confidential information furnished only by a confidential source," ... A person is a confidential source "if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." S.Rep.No.1200, 93d Cong., 2d Sess. 13 (1974) U.S.Code Cong. & Admin.News, 6267, 6291 (Conference Report), *reprinted in Freedom of Information Act and Amendments of 1974* (P.L. 93–502), *Source Book: Legislative History, Texts and Other Documents at 230* (Joint Comm. Print 1975) (hereinafter "Source Book"). Whether there is an expressed or implied assurance of confidentiality is a question of fact to be determined in regard to each source. 654 F.2d at 923.

The breadth of this exemption's coverage is demonstrated by the following passage from *Lesar v. United States Dept. of Justice, supra,* cited approvingly in *Lame*:

> Exemption 7(D) differs from other FOIA exemptions in that its applicability depends not on the specific factual contents of a particular document; instead, the pertinent question is whether the information at issue was furnished by a "confidential source" during the course of a legitimate criminal law investigation. Once that question is answered in the affirmative, all such information obtained from the confidential source receives protection. *Id.* at 492 (footnotes omitted).

In the present case, the Defendant has identified two groups of "confidential sources" for which the exemption was claimed: (1) members of local, state, and foreign law enforcement agencies who have supplied in-

---

16. In our July 8, 1981 Order, we specifically directed the Plaintiff to "submit an affidavit setting forth the reasons why he has requested the documents which are the subject of the instant action." Nothing was filed by the Plaintiff in response to this Order.

17. See, *Sands v. Murphy,* 633 F.2d 968, 971 (1st Cir. 1980); *Lesar v. United States Department of Justice, supra,* 636 F.2d at 492; see also, *Church of Scientology v. United States Department of Justice,* 612 F.2d 417 (9th Cir. 1979); *Terkel v. Kelly,* 599 F.2d 214 (7th Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

formation to the DEA on a routine basis; and (2) private individuals who have offered to cooperate with the DEA.

 As to the former class, it appears now that the great weight of decisional authority recognizes that the word "source" in Exemption 7(D) includes not only individuals such as private citizens and paid informants but also entities such as the state, local, and foreign law enforcement authorities here involved. *Lesar v. United States Dept. of Justice, supra,* 636 F.2d at 491; *Church of Scientology v. United States Dept. of Justice,* 612 F.2d 417, 426 (9th Cir. 1979); *Keeney v. Federal Bureau of Investigation,* 630 F.2d 114, 117–19 (2d Cir. 1980); *Nix v. United States,* 572 F.2d 998, 1005 (4th Cir. 1978); *Katz v. Department of Justice,* 498 F.Supp. 177, 182–84 (S.D.N.Y. 1979); *contra, Ferguson v. Kelley,* 455 F.Supp. 324, 326–17 (N.D.Ill.1978). The debilitating effect that such a narrow construction of the term "confidential source", as to include only individual persons, would have upon the functioning of federal law enforcement authorities was best explained by the Court in *Lesar* :

> To construe the term "confidential source" to include only persons would create a significant gap in the scope of protection afforded the files of a criminal law enforcement agency. If the enforcement authority could not assure that information furnished by entities such as state and local law enforcement agencies would remain confidential, it would be confronted with the possibility of losing these valuable sources of information— and, as a consequence, the federal agency's investigatory operations would be affected adversely. This is precisely the result Congress unequivocally sought to avoid. 636 F.2d at 491.

Additionally, our independent review of the legislative history concerning the enactment of this statutory exemption persuades us that Congress intended no such distinction in section 7(D) between individual and institutional sources of information.[18] Rather, we are certain that Congress intended generally to extend protection to whatever source of information the federal law enforcement agency might employ during the course of an investigation. Therefore, since these institutional entities have supplied information to the DEA here with the express understanding that it would be kept confidential (Affidavit, ¶ 15f), we find that the agency's refusal to disclose any material derived from these sources was proper under Exemption 7(D).

 Finally, with respect to the individual "confidential sources", we find that the information they offered was given in circumstances from which an assurance of confidentiality could be reasonably inferred, that is, "in the course of an investigation that must have appeared highly serious and sensitive to the person interviewed." *Lamont v. Department of Justice,* 475 F.Supp. 761, 779 (S.D.N.Y.1979); see, *Nix v. United States, supra,* 572 F.2d at 1004–05; *Pachecho v. FBI,* 470 F.Supp. 1091, 1102–03 (D.P.R.1979). Specifically, it is reasonable in these circumstances to conclude that "[t]he release of the identity of these individuals or the release of information which could be predicted to reveal their identities could subject such individuals to danger of personal harm or harassment and could seriously impede the ability of the . . . [DEA] to obtain information vital to law enforcement investigations." *Katz v. Department of Justice, supra,* 498 F.Supp. at 183. Furthermore, unless the maximum feasible protection is afforded these information sources, the DEA's ability to encourage future cooperation would likewise be severely hindered. Therefore, we hold that the Defendant also acted properly in invoking Exemption 7(D) to excise the names and the information supplied by these individual "confidential sources." [19]

---

**18.** For an extensive analysis of this legislative history, see, *Church of Scientology v. U. S. Dept. of Justice, supra,* 612 F.2d at 422–26.

**19.** It is our view that the identities of these individuals would also be protected by Exemption 7(C), discussed *supra,* since disclosure would no doubt entail an "unwarranted inva-

### G. Exemption (b)(7)(F)

█ Under this exemption, an agency may withhold "investigatory records" when production of such records would "endanger the life or physical safety of law enforcement personnel." Pursuant to this provision, the DEA has deleted from the released documents the names and identities of DEA Special Agents, Supervisory Special Agents, and local law enforcement officers. Its reasoning was as follows:

"DEA Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment, and actual murder of undercover and other DEA Special Agents. If the deleted names of Special Agents were released pursuant to the Freedom of Information Act, DEA would be consequently releasing this data to the public realm. DEA does not consider it to be in the public interest to release the identity of its Special Agents. To the contrary, DEA considers public interest to be best served through the non-disclosure of the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective—the suppression of the illicit traffic of narcotics and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA." (Affidavit, ¶ 15g).

We believe that the Defendant's actions in excising this personal information of its agents from the released documents falls clearly within the scope of section (7)(F). See, *Shaver v. Bell, supra,* 433 F.Supp. at 441 (deletion of names and information that might lead to the identity of FBI agents appropriate under this exemption); *Nunez v. Drug Enforcement Administration, supra,* 497 F.Supp. at 212 (same with respect to DEA agents). Therefore, we hold that the DEA acted properly in withholding this information under 5 U.S.C. § 552(b)(7)(F).

### H. Exemption (b)(7)(E)

█ This final exemption claimed allows the agency to withhold "investigatory records" when production would "disclose investigative techniques and procedures." Despite its broad language, the legislative history of this provision reveals that it was not meant to exempt all investigative procedures and techniques from disclosure.

The conferees wish to make clear that the scope of this exception against disclosure of "investigative techniques and procedures" should not be interpreted to include routine techniques and procedures already well known to the public, such as ballistic tests, fingerprinting, and other scientific tests or commonly known techniques. Nor is this exemption intended to include records falling within the scope of subsection 552(a)(2) of the Freedom of Information law, such as administrative staff manuals and instructions to staff that affect a member of the public. Conference Report No. 93–1200, 93d Cong. 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 6267, 6285, 6291.

See also, *Malloy v. United States Department of Justice,* 457 F.Supp. 543, 545 (D.D.C.1978); *Ferguson v. Kelley, supra,* 448 F.Supp. at 922; *Ott v. Levi,* 419 F.Supp. 750, 752 (E.D.Mo.1976).

█ In the instant case, this particular exemption was utilized only once by the Defendant.[20] After conducting an independent examination of this document, this

---

sion of personal privacy." See, *Smith v. Flaherty, supra,* 465 F.Supp. at 822–23 (relying on both Exemption 7(C) and 7(D) to protect identities of sources in FBI investigation).

**20.** At page 247 of the documents submitted *in camera.*

Court finds that the excised information does reveal a type of surveillance which cannot be considered routine in nature, nor do we believe it would be one generally known to the public. Therefore, we hold that it was appropriately deleted under 5 U.S.C. § 552(b)(7)(E).

In sum, this Court has reviewed in detail the *Vaughn* index and the documents submitted by the Defendant *in camera.* After doing so, and for the reasons stated above, we conclude that all of the statutory exemptions utilized by the Government to withhold or excise material from the Plaintiff's DEA file were properly claimed. Accordingly, Plaintiff is not entitled to release of any additional information contained in these records.