**REPUBLIC OF NEW AFRIKA,** et al., **Plaintiffs,**

v.

**FEDERAL BUREAU OF INVESTIGATION,** et al., **Defendants.**

Civ. A. No. 78–1721.

United States District Court, District of Columbia.

July 29, 1985.

As Amended Dec. 15, 1986.

Jeffrey Haas, Chicago, Ill., for plaintiffs.

Robert Eaton, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

## I. BACKGROUND

This is an action arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for disclosure of certain materials by the Federal Bureau of Investigation ("FBI"). Plaintiff Republic of New Afrika ("RNA") characterizes itself as a "nation of Black people within the territorial boundaries of the United States of America" and has claimed sovereignty over portions of the United States. *See* Complaint ¶ 3. Plaintiff Imari Abubakari Obadele is president of the RNA. *Id.* at ¶ 4.[1] Plaintiff Kenneth Lawrence Burg characterizes himself as a "long time journalist, writer and political activist" who is interested in matters pertaining to the RNA. *Id.* at ¶ 5.

Plaintiffs' quest to obtain the documents that are the subject of this litigation began a decade ago on April 30, 1975 when Mr. Burg sent a letter to the FBI requesting the release of information pursuant to FOIA pertaining to, *inter alia,* the RNA. Loome Aff. (Feb. 7, 1980) ¶ 54. The FBI began releasing documents on October 1, 1975, when Mr. Burg received 113 pages of material from FBI Headquarters files. *Id.* at ¶ 58. On this and subsequent occasions, plaintiffs were informed that the FBI was withholding selected materials pursuant to certain FOIA exemptions. *See, e.g., id.*

Plaintiffs filed this action on September 14, 1978[2] alleging that the FBI had improperly claimed the FOIA exemptions and had failed to acknowledge the existence of certain documents. Complaint, ¶ 49. The complaint sought information concerning a list of dozens of individuals, organizations, and topics. *Id.* The FBI ultimately identified 52,728 pages of documents as being responsive to plaintiffs' FOIA requests. Approximately 12,596 pages have been withheld from plaintiffs to date as of the most recent count available to the Court.[3]

---

1. Plaintiff Obadele and a number of other RNA members were convicted of: conspiring to assault federal officers engaged in performance of their duties in violation of 18 U.S.C. § 371; using firearms to commit the assault in violation of 18 U.S.C. § 111; and unlawfully possessing unregistered firearms required by law to be registered in violation of 26 U.S.C. § 5861(d). *See United States v. James,* 528 F.2d 999 (5th Cir.), *cert. denied sub nom. Henry v. United States,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). These arrests grew out of a shoot-out between FBI agents and members of the Jackson, Mississippi police force on the one hand and RNA members on the other in Jackson which resulted in the death of a Jackson policeman and the wounding of another and of an FBI agent. *James,* 528 F.2d at 1004. The prosecution in the criminal proceedings maintained the FBI was at the RNA's "capitol" where the shoot-out occurred to execute an arrest warrant on an individual the FBI believed to be inside who had fled from Michigan on a first degree murder charge. *Id.* Mr. Obadele and the RNA have insisted that they seek the materials that are the subject of this action to establish that the "attack" on the RNA capitol was made pursuant to a government program to harass, disrupt, and neutralize the RNA.

2. By the time the complaint was filed, plaintiffs had already received significant levels of materials from the FBI. *See, e.g.,* Loome Aff. (Feb. 7, 1980) ¶¶ 11 (172 pages on July 21, 1976); 70 (225 pages on January 4, 1977); 19 (467 pages on April 4, 1977); 76 (883 pages on July 15, 1977); 77 (649 pages on July 18, 1977); 88 (1,017 pages on November 4, 1977).

3. Defendants' Statement of Material Facts as to Which There is no Genuine Issue ¶ 174. The number of withheld documents may have de-

The matter has been the subject of extensive proceedings since 1978. The government has submitted numerous *Vaughn*-type affidavits/declarations [4] covering 16,783 documents in six subject areas identified by the parties.[5]

On August 2, 1983, defendants moved for summary judgment, contending that defendants had provided all materials to which plaintiffs had a right pursuant to FOIA and lawfully withheld or excised portions of other materials pursuant to three of the statutory exemptions to FOIA: Exemptions 1, 3 and 7.[6] On September 30, 1983, counsel for plaintiffs filed an opposition to defendants' motion and asked the Court to conduct an *in camera* inspection of certain materials to determine whether defendants had properly asserted the various FOIA exemptions. The brief submitted by plaintiffs made clear that plaintiffs were not seeking the Court's review of all materials not provided to plaintiffs.[7] Instead, plaintiffs informed the Court that they sought "a sample *in camera* inspection using 200 documents selected by Plaintiffs." Plaintiffs added:

These documents would be chosen based on the likelihood of their demonstrating the F.B.I. conspiracy to neutralize Plaintiffs by use of the pre-arranged raid as well as the likelihood that the deletions in the documents are unjustified. If disclosure of the originals of the two hundred documents selected by Plaintiffs *in camera* satisfied the Court that the Defendants were witholding [sic] properly, then Plaintiffs would assume that they were using the same methods throughout.[8]

On November 5, 1984, the Court heard argument concerning the government's motion for summary judgment and plaintiffs' motion for *in camera* review. Counsel for plaintiffs again urged the Court to review a sample of materials containing redactions to be selected by plaintiffs in order to resolve whether plaintiffs' contention that defendants were applying the claimed exemptions in an overbroad fashion had merit. Although the Court expressed some reservations about utilizing documents chosen by plaintiffs instead of documents chosen at random, counsel for plaintiffs stressed that allowing plaintiffs to choose the documents would be more instructive by allowing the parties to focus on those items that were most in dispute as a genuine test of

---

clined slightly recently when the FBI Classification Appeals and Affidavit Unit re-reviewed certain classification determinations and concluded that continued classification of certain informants and the information provided by them was no longer necessary under Executive Order 12356 (April 6, 1982). *See* Tatman Declaration ¶ 5.

**4.** In *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), the Court of Appeals approved the use of agency-produced indices identifying the exemption category claimed with regard to individual deletions or documents being withheld accompanied by affidavits submitted to justify each instance of withholding.

**5.** These areas are delineated in the Court's orders of October 23, 1979, July 11, 1980, January 19, 1982, and February 4, 1983.

**6.** Those provisions of the FOIA provide in pertinent part:
(b) This section [regarding mandatory disclosure] does not apply to matters that are
(1)(A) specifically authorized under criteria established by national defense or foreign policy and

(B) are in fact properly classified pursuant to such Executive Order;
(3) specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;
(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, ... confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.
5 U.S.C. § 552(b).

**7.** Answer to Defendants' Motion for Summary Judgment and Petition for Rulings and *In Camera* Inspection of Selected Documents ¶ 10.

**8.** *Id.*

the remaining materials. As Mr. Haas told the Court, plaintiffs were "willing to accept that if the Court doesn't find any improper claim there, it won't be anywhere." [9]

Without in any way suggesting that *in camera* review was required,[10] the Court concluded, in its discretion, that plaintiffs' motion for *in camera* review afforded the most expeditious means of resolving the question of the propriety of the claimed exemptions. Accordingly, the Court agreed to conduct the review urged by plaintiffs and reserved ruling on the motion for summary judgment pending that review.

On January 16, 1985, plaintiffs submitted the redacted documents they wished the Court to consider.[11] On May 1, 1985, defendants filed true and exact copies of the unredacted originals with the Court. The Court has now completed its review of these materials and, for the reasons set forth below, finds that the redactions were proper.

## II. DISCUSSION

■ The Freedom of Information Act was conceived "in an effort to permit access by the citizenry to most forms of government records." *Vaughn*, 484 F.2d at 823; *see also McGeehee v. CIA*, 697 F.2d 1095, 1108 (D.C.Cir.1983); *Docal v. Bennsinger*, 543 F.Supp. 38 (M.D.Pa.1981). "Congress recognized, however, that public disclosure is not always in the public interest and thus provided that agency records may be withheld from disclosure under any of the [] exemptions defined in 5 U.S.C. § 552(b)." *CIA v. Sims*, 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). It is well settled that these limited exemptions are to be construed narrowly so as to provide maximum access consonant with the overall purpose of FOIA. *E.g., Yeager v. Drug Enforcement Administration*, 678 F.2d 315 (D.C.Cir.1982). By statute, the burden of establishing that a particular record, or a portion thereof, falls within one of the enumerated exemptions lies with the agency. 5 U.S.C. § 552(a)(4)(B). *See Exxon Corp. v. FTC*, 663 F.2d 120, 127 (D.C.Cir. 1980).

With these principles in mind, the Court made a thorough review of the materials designated by plaintiffs for *in camera* review as well as all the *Vaughn* statements submitted by defendants. The Court summarizes its conclusions both with regard to the documents submitted for *in camera* review and the record as a whole by reviewing the principal exemptions claimed in connection with the case at bar.

### A. *Exemption 7(C)*

■ The government has withheld certain materials from plaintiffs pursuant to Exemption 7(C) which applies to "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C). The threshold determination in considering this exemption is whether the materials in question are investigatory records compiled for law enforcement purposes.[12] If the materials meet these prerequisites, the availability of the exemption then turns on a balancing of the privacy interest asserted and

---

9. Mr. Haas made the same point at several points in his argument.

10. *See, e.g., Ray v. Turner*, 587 F.2d 1187 (D.C. Cir.1978) ("Where the record contains a showing of bad faith the district court would likely require *in camera* inspection.").

11. In submitting the redacted documents, plaintiffs' counsel requested "an opportunity to be heard if the Court feels there is some basis for accepting the redactions or withholdings." In a June 28, 1985 Memorandum-Order, the Court noted that plaintiffs had already had an opportunity to be heard concerning these materials in the context of defendants' motion for summary judgment. Nevertheless, the Court afforded plaintiffs an opportunity to submit any supplemental memorandum they wished to file by Monday, July 8, 1985. Plaintiffs did not submit any response to the Court's order.

12. Of course, this inquiry is identical to the threshold determinations that must be made with regard to the government's reliance on Exemptions 7(D), 7(E) and 7(F). Accordingly, the Court intends that its discussion of these issues in the context of Exemption 7(C) address its consideration of Exemptions 7(D), 7(E), and 7(F) as well.

the public's interest in disclosure. *See, e.g., Stern v. FBI,* 737 F.2d 84, 88, 91 (D.C.Cir.1984).

### 1. *Threshold Requirements*

█ The principal mission of the Federal Bureau of Investigation, the agency that developed the documents that are the focus of this action, is criminal law enforcement. *Pratt v. Webster,* 673 F.2d 408, 418 n. 25 (D.C.Cir.1982); *see* 28 U.S.C. § 533 (FBI responsible for detecting and aiding in the prosecution of federal crimes). Thus the Court of Appeals for this Circuit has held that a court can accept "less exacting proof" and apply "a more deferential attitude" toward claims of law enforcement purpose made by the FBI. *Pratt,* 673 F.2d at 418.

The record in this case leaves no doubt that the investigatory activities that gave rise to the documents plaintiffs seek were related to law enforcement. Affidavits furnished by the FBI demonstrate that the FBI had identified particular individuals and incidents in connection with possible violations of law, thereby demonstrating that the FBI was acting within its principal function of law enforcement and not merely engaging in a general monitoring of private individuals' activities. *Pratt,* 673 F.2d at 420. For example, the February 7, 1980 affidavit of Special Agent Loome reports that the FBI investigated plaintiff Obadele to determine if his activities were in violation of a number of federal statutes noted at the margin.[13] In addition, the nexus between the investigation and the FBI's law enforcement duties is more than

sufficient to support a colorable claim of its rationality. *Pratt,* 673 F.2d at 421.[14]

### 2. *Balancing of Interests*

Exemption 7(C) permits nondisclosure to the extent that production would constitute an unwarranted invasion of personal privacy. Application of this exemption requires a balancing of the privacy interest asserted against the public's interest in disclosure. *See Department of the Air Force v. Rose,* 425 U.S. 352, 370–73, 96 S.Ct. 1592, 1603–04, 48 L.Ed.2d 11 (1976); *Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 862 (D.C.Cir.1981).

As the relevant *Vaughn* affidavits make clear, the government has relied on Exemption 7(C) to protect *inter alia* persons named in investigatory files who may or may not have been considered criminal suspects and names of FBI agents and employees. The Court of Appeals for this Circuit has held that information in an investigatory file tending to indicate individuals who have been at one time of investigatory interest to the FBI is an appropriate subject for exemption under Exemption 7(C). *Fund for Constitutional Government,* 656 F.2d at 863; *Baez v. Department of Justice,* 647 F.2d 1328, 1338 (D.C. Cir.1980). As the Court of Appeals has noted: "There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of FBI investigation." *Fund for Constitutional Government,* 656 F.2d at 864 (quoting affidavit submitted and quoted with approval in *Baez,* 647 F.2d at 1338). Although these

---

**13.** Special Agent Loome reports that the investigation considered whether Mr. Obadele's activities constituted violations of 18 U.S.C. §§ 2, 111, 231, 245(b)(3), 371, 924(c)(1), 1114, 2101, 2383, 2384 and 2385, as well as 22 U.S.C. § 401. Loome Aff. (Feb. 7, 1980) ¶ 158.

The FBI conducted similar investigations with regard to a number of RNA members. *See, e.g.,* Loome Aff. (Feb. 25, 1981) ¶¶ 11–16; *see also* Ogden Declaration (Feb. 4, 1983) ¶ 18 (investigation to determine if activities of RNA in violation of federal law); Ogden Declaration (Sept. 27, 1982) ¶ 16; Loome Aff. (Oct. 28, 1980) ¶ 29; Ogden Aff. (April 14, 1982) ¶ 21 (investigation of Jerry R. Steiner).

**14.** In *Shaw v. Federal Bureau of Investigation,* 749 F.2d 58, 63–64 (D.C.Cir.1984), the Court of Appeals recognized that a nexus of the type described *supra* suffices to establish the basis for Exemption 7 "only if it is unrefuted by persuasive evidence that in fact another, nonqualifying reason prompted the investigation." The burden of producing evidence of such a nonqualifying reason is on the plaintiffs. *Id.*

In this regard the Court notes plaintiffs' contention that the strongest indication of FBI activity that is *ultra vires* or illegal is contained in the documents selected by the plaintiffs for *in camera* review. The Court, in reviewing these materials, did not find such evidence.

cases do not establish a *per se* rule against release of such information, there are no "exceptional interests that would militate in favor of disclosure" by outweighing the "severe intrusion" presented by these materials. *Fund for Constitutional Government,* 656 F.2d at 866.

The Court next considers the FBI's effort to withhold the names of law enforcement officials referred to in these materials. The Court of Appeals for this Circuit has addressed the extent of any privacy interest law enforcement officials may have on several occasions and has repeatedly emphasized that there is no "blanket exemption" for the names of all FBI agents. *Baez,* 647 F.2d at 1339; *Lesar v. United States Department of Justice,* 636 F.2d 472, 487 (D.C.Cir.1980). Nevertheless, as the *Lesar* Court stated:

[t]he agent by virtue of his official status does not forgo altogether any privacy claim in matters related to official business. As several courts have recognized, these agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives.

*Lesar,* 636 F.2d at 487 (footnote omitted).

The *Vaughn* affidavits submitted in this action concerning the Exemption 7(C) claims made in connection with the names of individual law enforcement officials echo the concerns noted by the Court of Appeals in accepting 7(C) claims in *Baez* and *Lesar.* Moreover, nothing in the materials before the Court reflects the type of malfeasance in connection with these individuals that the Court of Appeals found required disclosure of an agent's identity in *Stern v. F.B.I.,* 737 F.2d 84, 93 (D.C.Cir.1984). Accordingly, the Court finds Exemption 7(C)

to have been properly invoked in this context.[15]

### B. *Exemption 7(D)*

■ Exemption 7(D) permits nondisclosure of investigatory records compiled for law enforcement purposes to the extent that production would:

disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the case of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source.

5 U.S.C. § 552(b)(7)(D). The exemption's purpose "is to prevent the FOIA from causing the 'drying up' of sources of information in criminal investigations." *Shaw,* 749 F.2d at 61 (citation omitted). Without commenting on the source of any of the information submitted to the Court, the Court would note that the Court of Appeals has recognized that the phrase confidential source should be given its plain meaning and includes "nonfederal entities such as state, local, and foreign law enforcement agencies as well as individuals such as private citizens and paid informants." *Baez,* 647 F.2d at 1340. The Court finds that the Exemption 7(D) redactions selected by plaintiffs for review, read in conjunction with the relevant affidavits, in fact constitute "confidential information furnished only by [a] confidential source" pursuant to express pledges of confidentiality. Moreover, the *Vaughn* affidavits establish the basis for application of this exemption to the 7(D) materials not submitted for review by the Court.

Plaintiffs' principal objection to the government's reliance on Exemption 7(D)

---

**15.** The FBI has also claimed that Exemption 7(F), the exemption for information in investigatory records that would "endanger the life or physical safety of law enforcement personnel," is applicable to the names of law enforcement officials that have been withheld. Although there is less authority construing this exemption than others, it has been held applicable where the requester "had a past record of violence" and where the information relates to "possible future targets for retaliation." 2 O'Reilly, *Feder-* *al Information Disclosure* § 17.12 (1984). In light of Mr. Obadele's felony conviction for a violent attack on federal law enforcement officials, *see supra* note 1, and the risk that law enforcement personnel who participated in the investigation and prosecution of Mr. Obadele and RNA members might be subject to risks to their physical safety, the Court finds Exemption 7(F) applicable as well. *See* Loome Aff. (Feb. 7, 1980) ¶ 165.

relates to Mr. Thomas Spells, a government informant who testified against RNA members in earlier criminal proceedings. Plaintiffs contend that, since Mr. Spells' identity is already known to plaintiffs, the government may not claim this exemption to protect his identity. Assuming that plaintiffs are correct that Mr. Spells was the source of any of the information in question, a proposition the Court has no intention of confirming or denying, the Fourth Circuit's decision in *Radowich v. United States Attorney, District of Maryland,* 658 F.2d 957, 960 (4th Cir.1981), establishes that public knowledge of the identity of a confidential source does not defeat reliance on Exemption 7(D). Instead, the protection recognized by Exemption 7(D) "continues *until* the beneficiary of the promise of confidentiality waives disclosures." *Id.* (emphasis in original and citation omitted). There is no indication in the record that any of the government's confidential sources has waived disclosure.

## C. *Exemption 1*

■ The government has also relied extensively on Exemption 1, which applies to material authorized under criteria set by Executive Order to be kept secret in the interest of national defense or foreign policy. 5 U.S.C. § 552(b)(1). Congress has made clear that courts should give "substantial weight" to agency claims to this exemption. *See* S.Conf.Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 6267, 6290; *see also Halperin v. Central Intelligence Agency,* 629 F.2d 144, 148 (D.C.Cir.1980). The Court of Appeals, in considering this exemption, has held that in the absence of evidence of agency bad faith, summary judgment may be granted for the government if the agency affidavits accompanying such a motion contain "reasonable specificity of detail." *Halperin,* 629 F.2d at 148.[16]

The information in dispute in connection with Exemption 1 was originally classified as national security information pursuant to Executive Order 12065.[17] According to the government, this information was obtained from "certain friendly foreign countries" pursuant to arrangements for the exchange of information. The government maintains that release of this foreign government information would damage the national security of the United States by straining relations with these governments.

16. Much of plaintiffs' argument rests on the claim that there is sufficient evidence of bad faith as to require the Court to question the government's affidavits. As plaintiffs correctly note, courts have held that *in camera* examination may be required upon a showing of such bad faith. *See, e.g., Ray v. Turner,* 587 F.2d 1187 (D.C.Cir.1978). Although the Court did not make a finding as to whether plaintiffs had offered any specific evidence to buttress their claim of bad faith, the Court, in its discretion, elected to conduct a limited *in camera* review of documents selected by plaintiffs. That review demonstrated to the Court that plaintiffs' allegations of bad faith were without foundation. *See Hayden v. National Security Agency/Central Security Serv.,* 608 F.2d 1381, 1387 (D.C.Cir.1979) ("sufficiency of [agency] affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith"), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

17. Executive Order 12065 established "foreign government information" as one category of information that need not be disclosed. Foreign government information was defined as:
 (a) Information that has been provided to the United States in confidence by, or produced by the United States pursuant to a written joint arrangement requiring confidentiality with, a foreign government or international organization of governments; or
 (b) Information produced by the United States pursuant to a written joint agreement with a foreign government or international organization of governments requiring that either the information or the arrangement, or both, be kept in confidence.
*Id.,* § 6–103.

Executive Order 12065 was revoked on August 1, 1982 and succeeded by Executive Order 12356. The new order eliminates the requirement that the government apply a balancing test based on the interest in disclosure and possible harm to national security. Instead "[u]nauthorized disclosure of foreign government information, the identity of a confidential foreign source, or intelligence sources or methods is presumed to cause damage to the national security." Executive Order 12356, § 1.3(c). The Court of Appeals' decision in *Afshar v. Department of State,* 702 F.2d 1125, 1137 (D.C.Cir. 1983), indicates that even though this action was begun when the more liberal executive order was in effect, plaintiffs have no right to have that order applied over the order in effect when the agency completes its review.

Plaintiffs contend that Exemption 1 is not applicable in this case since most of the documents were not sent by FBI field offices to FBI headquarters in Washington for some time (if at all). Plaintiffs' argument, however, overlooks the fact that the government asserts that *release* of this information would present the risk to national security. The fact that the information was retained in the field instead of in Washington is thus not controlling.

Plaintiffs also contend that the descriptions of the materials in question in the *Vaughn* indices are conclusory in nature and therefore, there is no way to tell if the exemption is applicable. Notwithstanding plaintiffs' protests, it is clear that the affidavits detail at length the type of harm that would result from disclosure. In fact, the types of harm claimed are similar or identical to rationales that have been approved of in other FOIA cases. *See, e.g., Baez,* 647 F.2d at 1335–36 (noting with approval government's claim that disclosure would cause foreign intelligence agencies to be less cooperative). In addition, the Court finds that the summaries of individual documents "provide specific information sufficient to place the documents within the exemption category" as is .required. *See Allen v. Central Intelligence Agency,* 636 F.2d 1287, 1291 (D.C.Cir.1980) (citation omitted).[18]

Finally plaintiffs contend, quoting Executive Order 12065, that the government may not rely on Exemption 1 "to conceal violations of law ... [or] to prevent embarrassment to a person, organization or agency." According to plaintiffs, this provision is triggered in this case as the government engaged in "unlawful activity [directed] against the RNA." Plaintiffs' argument in this regard is without merit. First, the limitation of Executive Order 12065 quoted by plaintiffs is not incorporated in Executive Order 12356, the Executive Order governing this action. *See supra* note 17. Second, the Court's *in camera* review did not reveal any indication that the government is now relying on any FOIA exemptions to withhold material about illegal behavior by the FBI. The Court notes in this regard that the documents reviewed by the Court were those identified by plaintiffs as those most likely to demonstrate that the FBI engaged in an illegal conspiracy to "neutralize Plaintiffs."

## III. CONCLUSION

At plaintiffs' request, the Court has reviewed the materials plaintiffs believed were most likely to establish illegal behavior by the FBI with regard to the RNA and improper claims to FOIA exemptions in this proceeding. The Court's review of these materials found no indications of either. Moreover, the record demonstrates that the FBI has disclosed that which it is required to disclose and withheld that information to which statutory FOIA exemptions are applicable.[19] Accordingly, the Court will enter an order granting defendants' motion for summary judgment.[20]

---

**18.** Of course, in describing documents being withheld, the government need not disclose so much as to constitute, in effect, a release of the document. *Vaughn v. Rosen,* 484 F.2d at 826.

**19.** Although not discussed specifically above, the Court concludes that the government's reliance on Exemptions 3 and 7(E) is also appropriate.

**20.** This dismissal is without prejudice to any application for attorneys' fees plaintiffs may wish to make pursuant to 5 U.S.C. § 552(a)(4)(E). In the interest of expediting consideration of this question, the Court will require plaintiffs to file any such application within forty-five days of the filing of this memorandum.