Lenny EPPS, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al., Defendants.

Civ. A. No. 89–84 SSH.

United States District Court,
District of Columbia.

Sept. 15, 1992.

Lenny Epps, pro se.

Claire M. Whitaker, Asst. U.S. Atty., Office of the U.S. Atty., Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Plaintiff filed suit in January 1989 under the Freedom of Information Act (FOIA) to compel disclosure of documents relating to his federal prosecution and resulting conviction. Defendant United States Attorney's Office (USAO) moves to have plaintiff's complaint dismissed, and defendants the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA) seek summary judgment against plaintiff Epps. Upon consideration of defendants' motion, plaintiff's opposition, defendants' reply, and plaintiff's surreply, the Court grants the motion of the USAO, the FBI, and the DEA.

### Background

Plaintiff seeks documents relating to a 1986 conviction. He argues that he was wrongly convicted and that he has a heightened need to obtain certain government documents to attempt to prove his innocence. In March of 1988, Epps sent a FOIA request to the Department of Justice requesting:

> from all law enforcement agenicies [sic] such as the F.B.I., D.E.A. and the Baltimore, [ ]City Police Dept. and any other agencies that participated in the investigations of case NO. Y–85–0547 that obtain any information such as papers Notes (rough) or transcribed in this investigation of U.S. v. Maurice C. Proctor and Lenny Epps Case No. Y–85–0547.

The USAO moves for dismissal of the portion of the complaint against it based on plaintiff's failure to have sought documents through the administrative process prior to filing this action. Defendants the FBI and the DEA, who have already responded to plaintiff's request, argue that they have produced all unprotected documents and portions of documents as required under the FOIA. Accordingly, the FBI and the DEA move for summary judgment with respect to the portions of the complaint against them.

### Discussion

■ The purpose of the FOIA, 5 U.S.C. § 552 is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *National Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). Accordingly, the FOIA represents "a general philosophy of full agency disclosure." *Department of the Air Force v. Rose*, 425 U.S. 352, 360, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). However, there are nine exemptions to this general rule of disclosure, *Baldrige v. Shapiro*, 455 U.S. 345, 352, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199 (1982), and the burden is on the government to show that the requested information which it declines to produce is exempt. *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989).

■ To be entitled to summary judgment, each movant agency must "prove[ ] that no substantial and material facts are in dispute and that [it] is entitled to judgment as a matter of law." *Weisberg v. Department of Justice*, 627 F.2d 365, 368 (D.C.Cir.1980). To meet this burden, the agency must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." *National Cable Television Ass'n v. Federal Communications Comm'n*, 479 F.2d 183, 186 (D.C.Cir.1973). In determining whether the agency has

satisfied this burden, the Court may rely solely on agency affidavits. *See Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.), *vacated in part on other grounds,* 607 F.2d 339 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). The affidavits, however, "must be 'relatively detailed' and nonconclusory." *Id.* (quoting *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

█ Because the primary purpose of the FOIA is to allow people to know what their government is doing, *National Labor Relations Bd.,* 437 U.S. at 242, 98 S.Ct. at 2327, each requester is treated equally, regardless of his reason for requesting the information. *National Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 875 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990).

*I. United States Attorney's Office*

█ Although the USAO acknowledges assisting the FBI with plaintiff's FOIA request as to USAO-originated information, it argues that plaintiff did not make a direct request to it. Until this suit was filed, the USAO was unaware that plaintiff wished to obtain documents from it. Wright Declaration ¶ 3–5. Accordingly, the USAO moves that plaintiff's complaint be dismissed as to it because plaintiff seeks judicial review of a FOIA request that was never made. However, the USAO also states that it will now treat plaintiff's letter of March 15, 1988, as a request and respond accordingly. Wright Declaration ¶ 6.

█ Under the FOIA, administrative remedies must be exhausted prior to judicial review. *American Fed'n of Gov't Employees v. Department of Commerce,* 907 F.2d 203, 209 (D.C.Cir.1990); *Spannaus v. Department of Justice,* 824 F.2d 52, 58 (D.C.Cir.1987); *Stebbins v. Nationwide Mut. Ins. Co.,* 757 F.2d 364, 366 (D.C.Cir. 1985). Accordingly, the USAO's motion is granted, and plaintiff's complaint against it is dismissed without prejudice for lack of subject matter jurisdiction. *Hymen v.*

*Merit Sys. Protection Bd.,* 799 F.2d 1421, 1423 (9th Cir.1986), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987); *see Dettmann v. Department of Justice,* 802 F.2d 1472, 1477 (D.C.Cir.1986).

*II. Federal Bureau of Investigation/Drug Enforcement Administration*

*A. Exemption (b)(2)*

█ Exemption (b)(2) allows agencies to withhold documents "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The FBI cites exemption (b)(2) to justify its deletion of "dates, amounts and method of payment on behalf of witnesses." Superneau Declaration ¶ 20. Plaintiff argues that payments to witnesses do not fall under exemption (b)(2) because witnesses are not personnel, and the payments are not internal.

To support its position, the FBI relies on *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (D.C.Cir.1981) (*en banc*). In *Crooker,* the court defined the limits of exemption (b)(2) in a two-part test, holding that a document does not have to be disclosed if (1) it is "predominantly internal," and (2) "if disclosure significantly risks circumvention of agency regulations or statutes." *Crooker,* 670 F.2d at 1074. The exemption was further expanded in *National Treasury Employees Union v. Customs Serv.,* 802 F.2d 525 (D.C.Cir. 1986), in which the court stated that "[w]here disclosure of a particular set of documents would render those documents operationally useless, the *Crooker* analysis is satisfied whether or not the agency identifies a specific statute or regulation threatened by disclosure." *National Treasury Employees Union,* 802 F.2d at 530–31.

In the present case, the FBI has specifically stated that "this exemption was asserted where it was logically determined that harm could result to the FBI's investigative function." Superneau Declaration ¶ 20. From this statement it is reasonable to conclude that the FBI has met the "circumvention" test. However, it does not satisfy the "predominantly internal" re-

quirement. *Crooker* does not discuss payments to witnesses, nor do any of the District of Columbia Circuit cases which *Crooker* cites. Instead, *Crooker* addresses law enforcement training manuals and discusses cases which involve documents of a more internal nature than the witness payments in this case. *See, e.g., Lesar v. Department of Justice,* 636 F.2d 472 (D.C.Cir.1980) (concerning symbols used to refer to FBI informants); *Cox v. Department of Justice,* 601 F.2d 1 (D.C.Cir.1979) (*per curiam*) (concerning United States Marshals' manual giving details concerning weapons, handcuffs, and transportation of prisoners); *Jordan v. Department of Justice,* 591 F.2d 753 (D.C.Cir.1978) (*en banc*) (involving documents relating to guidelines for prosecutorial discretion); *Vaughn v. Rosen,* 523 F.2d 1136 (D.C.Cir.1975) (involving reports prepared by the Civil Service Commission to provide advice to agencies on how to improve their personnel programs). For this reason, the Court finds that the records requested involving specific payments made by the FBI to non-government informants are not "predominantly internal," and cannot be protected by exemption (b)(2).

■ However, this does not end the inquiry. In 1986, Congress codified the "circumvention" test in *Crooker,* adding it to exemption (b)(7)(E). *See Kaganove v. Environmental Protection Agency,* 856 F.2d 884, 888–89 (7th Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 798, 102 L.Ed.2d 789 (1989). The Court finds that exemption (b)(7)(E) applies here and that the FBI can withhold the requested information. Revealing the dates amounts and methods of making payments to witnesses

> would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions [and] such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). *See also* Superneau Declaration ¶ 20; Summary Judgment Motion, p. 9.

■ In addition, the DEA has asserted exemption (b)(2) to protect Geographical Drug Enforcement Program (G–DEP) and Informant Identifier codes, and Narcotics and Dangerous Drugs Information System (NADDIS) numbers. These codes and numbers are "internal DEA markings and phrases regarding the treatment of and distribution of DEA documents.... Suspects could easily decode this information and change their patterns of drug activities, so as to evade detection by the Drug Enforcement Administration." Magruder Declaration ¶ 20. These types of internal markings clearly are exempt under (b)(2). *See Lesar,* 636 F.2d at 485–86; *Maroscia v. Levi,* 569 F.2d 1000, 1001–02 (7th Cir.1977); *Struth v. FBI,* 673 F.Supp. 949, 959 (E.D.Wis.1987); *Texas Instruments, Inc., v. Customs Service,* 479 F.Supp. 404, 406–07 (D.D.C.1979).

## B. *Exemption (b)(3)*

■ Next, the FBI argues that information relating to the grand jury, including the identities of witnesses, the deliberations and questions of the jurors, and the strategy or direction of the investigation, should be protected under exemption (b)(3).[1] The FBI further argues that information obtained through the interception of a wire or oral communication is protected under the same exemption. Exemption (b)(3) permits nondisclosure of documents

> specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

Under Rule 6(e)(2) of the Federal Rules of Criminal Procedure,

---

1. The Court notes that plaintiff denies any interest in material originating from the grand jury.

Plaintiff's Opposition at 4.

an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.

Fed.R.Crim.P. 6(e)(2). This rule has been found to satisfy the "statute" requirement of exemption (b)(3). *Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 867 (D.C.Cir. 1981). Therefore, the FBI does not have to reveal the information developed before the grand jury, including the identities of witnesses and the strategy or direction of the investigation. *Fund for Constitutional Gov't*, 656 F.2d at 869.

■ As to the intercepted communications, the FBI argues that 18 U.S.C. 2511(2)(a)(ii) mandates nondisclosure. In *Lam Lek Chong v. Drug Enforcement Admin.*, 929 F.2d 729 (D.C.Cir.1991), this Circuit found that 18 U.S.C. § 2517 exempts intercepted communications from disclosure under exemption (b)(3). Although it is unclear to the Court why the FBI focuses on § 2511(2)(a)(ii), which does not appear specifically to restrict disclosure by the FBI, the Court nevertheless finds withholding the information proper. Since §§ 2511 and 2517 broadly prohibit disclosure of this type of information, and the entire chapter was discussed generally in *Lam Lek Chong*, the Court is satisfied that this information is properly exempt from disclosure under (b)(3).

## C. Exemption (b)(5)

■ The FBI further argues that a draft affidavit containing United States Attorney work product can be withheld under exemption (b)(5). Exemption (b)(5) states that the government can withhold documents such as "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

This type of material is protected under exemption (b)(5), which is designed to protect the "decision making process of government agencies," *National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975), and to encourage "frank discussion of legal and policy issues." *Wolfe v. Department of Health and Human Servs.*, 839 F.2d 768, 773 (D.C.Cir. 1988) (*en banc*). This Circuit stated in *Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565 (D.C.Cir.1987), that

> the key question in Exemption 5 cases [is] whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.

*Dudman*, 815 F.2d at 1568. Disclosing the materials being withheld here, a draft affidavit, could have the effect that *Dudman* sought to avoid. Therefore, this document is properly exempt from disclosure under (b)(5).

## D. Exemption (b)(6)

■ The FBI also argues that autopsy photographs and felony arrest records should be protected from disclosure by exemption (b)(6), which allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Unlike most FOIA exemptions, exemption (b)(6) requires a balancing of interests. Specifically, a court must weigh an individual's privacy interests in nondisclosure against the public's interest in disclosure to decide whether to allow the withholding of information under (b)(6). *Horner*, 879 F.2d at 874. To do this the Court must first decide whether or not a substantial privacy interest is involved. *Horner*, 879 F.2d at 874. If the Court finds such an interest, then it

> must weigh that privacy interest in nondisclosure against the public interest in the release of the records in order to determine whether, on balance, disclo-

sure would work a clearly unwarranted invasion of personal privacy. *Horner,* 879 F.2d at 874–75.

In this case, an individual's interest in not having his or her autopsy photographs released to the public is substantial. Furthermore, the individual's family also has a substantial privacy interest in keeping their deceased relative's photographs out of the public realm. On the other hand, the public's interest in gaining access to these photographs is practically nonexistent when considered in light of the FOIA's purpose of exposing agency action to the public. *Horner,* 879 F.2d at 878–79. Therefore, the Court finds that the government may refuse to release the autopsy photographs.[2]

■ Although felony arrest records might also be properly withheld under exemption (b)(6), the Supreme Court has recently held that rap sheets categorically can be withheld under exemption (b)(7)(C). *Reporters Comm.,* 489 U.S. at 780, 109 S.Ct. at 1485. Finding that the records requested here are essentially the same as the rap sheets requested in *Reporters Comm.,* the Court has no need to analyze the disclosure of the felony arrest records under exemption (b)(6). Instead, the Court finds that this material is categorically exempt from disclosure under (b)(7)(C). *Reporters Comm.,* 489 U.S. at 780, 109 S.Ct. at 1485.

### E. Exemption (b)(7)(C)

■ Next, the FBI argues that it does not have to reveal (1) the identities of FBI employees, (2) the identities of other federal government employees, (3) the identities and/or information about third parties who are mentioned in FBI investigative files, (4) the identities and/or information about individuals who are of investigative interest to the FBI, (5) the identities and/or information about third-parties who provided information to the FBI, and (6) the identities of state or local law enforcement personnel. Superneau Declaration ¶¶ 30–41. The DEA seeks protection for similar information including Epps's "accomplices, other

defendants, informants, innocent third-parties, non-agent DEA personnel and third-parties [in] whom DEA has an investigative interest." Magruder Declaration ¶ 22. Both agencies rely on exemption (b)(7)(C), which excludes

> records or information compiled for law enforcement purposes, but only to the extent that the production ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7)(C).

■ Exemption (b)(7)(C) requires the Court to balance the privacy interests in nondisclosure against the public interest in disclosure. *Reporters Comm.,* 489 U.S. at 762, 109 S.Ct. at 1475. Case law from this and other circuits supports the exclusion of the type of information requested here. *Lesar,* 636 F.2d at 487–88 (exempting identities of agents, informants, and information about victims' family and associates); *Johnson v. Department of Justice,* 739 F.2d 1514, 1518–19 (10th Cir.1984) (exempting identities of FBI agents); *New England Apple Council v. Donovan,* 725 F.2d 139, 142–44 (1st Cir.1984) (exempting identities of Department of Labor Office of Inspector General officials and persons who gave information); *Maroscia,* 569 F.2d at 1002 (exempting identities of third-parties, FBI agents, and other law enforcement personnel). As one court has stated:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Nix v. United States,* 572 F.2d 998, 1006 (4th Cir.1978). Furthermore, plaintiff's unsubstantiated accusations of wrongdoing do not alter this result. *Miller v. Bell,* 661 F.2d 623, 630 (7th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484

---

**2.** The Court also notes that, in his opposition to the government's summary judgment motion, plaintiff denied any interest in autopsy photographs. Plaintiff's Opposition at 4.

(1982). Accordingly, the Court finds that the information requested was compelled for law enforcement purposes and could reasonably be expected to constitute an unwarranted invasion of privacy. Therefore, the information was properly withheld.

### F. Exemption (b)(7)(D)

▮ In addition, the FBI wants to withhold identities and information about confidential sources, and information provided under an assurance of confidentiality. It argues that exemption (b)(7)(D) allows this result. Exemption (b)(7)(D) allows nondisclosure of

> records or information compiled for law enforcement purposes, but only to the extent that the production ... (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

The FBI contends that the sources were confidential sources, arguing that the methods used by the agency when conducting interviews make it clear to the source that the information is being given confidentially.

> Based on my experience as an FBI agent, these factors almost universally create a situation during interviews in which it is clearly, albeit tacitly, understood by all concerned that the information to be provided during the interview is to be afforded maximum confidentiality.

Superneau Declaration ¶ 46. Although plaintiff disputes the sufficiency of this language, contending that the author lacks personal knowledge, his arguments must fail. This circuit recently analyzed the (b)(7)(D) exemption in *Dow Jones & Co. v. Department of Justice*, 917 F.2d 571

(D.C.Cir.1990), clarifying any doubt as to the application of the exemption.

> "The law of this circuit is that in the absence of evidence to the contrary, promises of confidentiality are inherently implicit when the FBI solicits information." As long as the department can show "that the information was solicited during the course of law enforcement investigations, the FBI raises the presumption that assurances were given" in exchange for the information.... Since the FBI typically promises confidentiality and rarely—if ever—will a source not desire it, only the starkest and most conclusive evidence of nonconfidentiality will rebut the presumption.

*Dow Jones*, 917 F.2d at 576–77 (citations omitted) (quoting *Schmerler v. FBI*, 900 F.2d 333, 337 (D.C.Cir.1990)). Therefore, the fact that the sources were interviewed by the FBI in the course of a law enforcement investigation raises the presumption that they were promised confidentiality, and it is plaintiff's burden to rebut this conclusion. Plaintiff has not met this burden.

Therefore, since the FBI acquired information from these sources during its investigation of Epps's criminal activities, both the names of the confidential sources and the information furnished by them can be withheld.

### G. Exemption (b)(7)(E)

▮ The FBI further argues that under exemption (b)(7)(E) it can withhold (1) polygraph charts and lists of polygraph questions, (2) techniques used to protect and/or relocate witnesses, (3) information that, if revealed, would be tantamount to identifying the use of a technique, and (4) mechanics of investigation techniques. Superneau Declaration ¶¶ 53–57. The DEA argues that investigative techniques that are not commonly known to the general public, and that cannot be explained on the public record without being compromised, are also protected by (b)(7)(E). Magruder Declaration ¶ 26. Exemption (b)(7)(E) permits the withholding of

records or information compiled for law enforcement purposes, but only to the extent that the production ... (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

This exemption is designed to allow the withholding of the type of information involved here. It protects law enforcement agencies from being required to provide information that might help criminals avoid apprehension. *See American Soc'y of Pension Actuaries v. Internal Revenue Serv.*, 746 F.Supp. 188, 190 (D.D.C.1990). Revealing this information could reasonably be expected to compromise the effectiveness of the techniques and hamper law enforcement. Therefore, the FBI can withhold such information.

### H. Exemption (b)(7)(F)

█ Lastly, the FBI relies on exemption (b)(7)(F) to withhold the names and/or initials of FBI employees, other government employees, and state and local law enforcement officers. Superneau Declaration ¶¶ 58–63. The DEA seeks to withhold the "names and identities of DEA Special Agents, Supervisory Special Agents and other law enforcement officers" under the same exemption. Magruder Declaration ¶ 28. Exemption (b)(7)(F) provides nondisclosure of

records or information compiled for law enforcement purposes, but only to the extent that the production ... (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. 552(b)(7)(F).

The same information withheld under exemption (b)(7)(C) may be withheld under exemption (b)(7)(F) to protect against risk of personal injury. *Maroscia*, 569 F.2d at 1002. Plaintiff and his associates have demonstrated violent tendencies, Superneau Declaration ¶ 59, and revealing the identities of federal agents and other law

enforcement personnel could expose those people to harassment or physical injury. Superneau Declaration ¶ 60. These names and/or initials can be withheld to protect the safety of those involved in the Epps investigation.

### Conclusion

For the reasons stated above, the Court grants the motion of the USAO, the FBI, and the DEA. The complaint is dismissed without prejudice as to the USAO for lack of subject matter jurisdiction for failure to exhaust administrative remedies. Because the Court finds that the affidavits of the FBI and the DEA adequately support that each item withheld is exempted from disclosure, the Court grants their summary judgment motion. Accordingly, the case is dismissed.