Thomas Edwin BLANTON, Jr., Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Defendant.

No. CIV.A. 93–1789(PLF).

United States District Court, District of Columbia.

Jan. 29, 2002.

James Hiram Lesar, Washington, DC, for plaintiff.

Daniel Franklin Van Horn, U.S. Attorney's Office, Wahsington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

Before the Court are defendant's motion for summary judgment and plaintiff's motion to enforce the Court's order of August 30, 1999. This case concerns a number of requests made by Thomas Edwin Blanton, Jr. to the United States Department of Justice and the Federal Bureau of Investigation for the disclosure of records concerning himself and his father under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.* Upon consideration of the arguments of the parties, the Court grants defendant's motion for summary judgment and denies plaintiff's motion to enforce.

## I. BACKGROUND

In the early 1960's, the government began to investigate Thomas Edwin Blanton, Jr. in connection with the September 15, 1963 bombing of the Sixteenth Street Baptist Church in Birmingham, Alabama in which four African American girls were killed. Last year, Mr. Blanton stood trial and was convicted of four counts of first degree murder for his role in the bombing. Plaintiff initiated this Freedom of Information Act request to obtain documents kept by the Department of Justice pertaining to the government's investigation of him. The facts of Mr. Blanton's FOIA action and the details of his FOIA request were summarized in the Court's August 30, 1999 Opinion and do not need to be repeated here. *See Blanton v. United States Dep't of Justice,* 63 F.Supp.2d 35, 39–40 (D.D.C. 1999).

After the Court issued its August 30, 1999 Opinion and Order, plaintiff moved for partial reconsideration. On June 2, 2000, the Court denied plaintiff's motion for partial reconsideration in part and granted it in part, concluding that except for plaintiff's contention that defendant should have searched its "tickler" files and electronic surveillance ("ELSUR") index for responsive documents, plaintiff's motion duplicated the arguments already fully considered and rejected by the Court and did not provide any basis for the Court to reconsider its ruling. *See* Order of July 2, 2000.[1] With respect to the ticklers and the ELSUR index, defendant acknowledged that it was required to search these records and submitted a declaration describing the search it had conducted of these files, and justifying the nondisclosure and redaction of some responsive documents.

---

1. "Ticklers" are defined by the FBI as carbon or duplicate copies of FBI documents. Creation of a tickler copy of FBI correspondence is often indicated on the top or bottom of a document in a manner similar to the commonly used "cc:" notation. The identification of a tickler copy, therefore, means simply that an identical copy of the original documents was provided to supervisory FBI officials and/or other interested FBI personnel who need to be aware of the information. Ticklers are not indexed in the FBI's Central Records System (hereafter "CRS"), or in any other system of records maintained by the FBI. Supplement to Defendant's Motion for Summary Judgment ("Supp.Mot.") at 2; *see also* Supp. Mot., Declaration of Scott A. Hodes ("Hodes Decl.") ¶¶ 4, 7.

In the order granting in part and denying in part the motion for partial reconsideration, the Court indicated that it would treat defendant's opposition to the motion as a motion for summary judgment on the issue of the search for responsive ticklers and responsive ELSUR files. The motion now has been fully briefed.

## II. DISCUSSION

### A. Adequacy of the Search for Tickler Files

Before it can obtain summary judgment in a FOIA case, an agency "must show, viewing the facts in the light most favorable to the requester, that ... [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994) (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984)). In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990); *Int'l Trade Overseas, Inc. v. Agency for Int'l Development*, 688 F.Supp. 33, 36 (D.D.C.1988). While there is no requirement that an agency search every record system, *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C.Cir.1990), or that a search be perfect, *Meeropol v. Meese*, 790 F.2d 942, 955–56 (D.C.Cir. 1986), the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *See Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C.Cir.1998).

The Court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Agency affidavits or declarations must be "relatively detailed and non-conclusory ...." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir.1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Services, Inc. v. SEC*, 926 F.2d at 1200. While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block*, 684 F.2d 121, 127 (D.C.Cir.1982), they must "describe what records were searched, by whom, and through what processes," *Steinberg v. United States Dep't of Justice*, 23 F.3d at 552, and must show "that the search was reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1350–51 (D.C.Cir.1983); *see Campbell v. United States Dep't of Justice*, 164 F.3d at 27.

Defendant contends that the search it conducted for responsive ticklers was adequate and reasonably calculated to uncover responsive documents. It explains that ticklers are not indexed on the FBI's Central Records System or any other system of records maintained by the FBI; it therefore could not conduct a search of FBI indices. *See* Supp. Mot. at 2, Hodes Decl. ¶¶ 4, 7. Mr. Hodes explains that ac-

cording to the FBI's document retention policy at the time the investigation of Mr. Blanton began, ticklers created during the course of the investigation typically would have been retained by FBI agents for only a short period of time, making it unlikely that these records still would be in the FBI's files. *See* Hodes Decl. ¶ 5. Defendant therefore contacted the case agents currently assigned to the investigation in the Birmingham Field Office and the Hate Crimes Unit at FBI Headquarters to see if any of these agents possessed or were aware of the existence of these records. *See* Supp. Mot., Second Declaration of Scott A. Hodes ("Second Hodes Decl.") ¶ 5. In his declaration, Mr. Hodes explains that if ticklers responsive to plaintiff's request still exist, they would most likely be kept by agents in these offices and not at any other unit within FBI Headquarters or any other FBI field office. *See id.* Mr. Hodes represents that the agents he contacted indicated that they did not possess or know where these files might be located, if they still exist. *See id.*

Plaintiff contends that defendant's search was inadequate because there is a high probability that some of these tickler files still exist, and defendant's search should have uncovered some of these records.[2] He argues that defendant cannot conclude that these files no longer exist simply because of the official retention policy for ticklers, as case agents were permitted to retain these documents if they wished to do so and some ticklers therefore might be found in FBI files. Plaintiff's primary argument is that defendant's search was inadequate because none of the FBI agents who originally were assigned to this investigation and have since retired were contacted to determine whether they have these files or knew where these files

might be located. Mr. Blanton argues that it is reasonable to require the agency to contact former employees who may have knowledge about the location of records responsive to a FOIA request, especially because defendant acknowledges that contacting these agents is the only systematic way of searching for these files in this case. *See* Supp. Mot. at 4–5.

On the basis of the declarations submitted, the Court concludes that defendant's search was reasonable. Even if plaintiff is correct in asserting that some ticklers still might exist somewhere in the FBI's files, defendant has explained that the case agents currently assigned to the investigation are the only individuals likely to possess or to know of these documents. Defendant represents that it inquired of these agents whether they had these files, and they indicated that they did not have or know of the whereabouts of any such records. Because tickler files are not indexed, there is no way to determine whether these records may still exist in another location short of a search of all FBI files—a step clearly not required by the FOIA.

■ With respect to plaintiff's argument that defendant should have contacted the retired FBI agents who originally worked on this case, the Court concludes that the FOIA does not impose an obligation on defendant to contact former employees to determine whether they know of the whereabouts of records that might be responsive to a FOIA request. Indeed, the case cited by plaintiff in support of his argument actually supports the opposite proposition. *See Valencia–Lucena v. United States Coast Guard,* 180 F.3d 321, 328 (D.C.Cir.1999). In *Valencia–Lucena,* the court held that defendant's search was

---

**2.** Plaintiff does not challenge the adequacy of the FBI's search for responsive ELSUR rec-

ords.

inadequate because it did not contact the lieutenant who was still employed by the Coast Guard to determine whether he knew where the logbook sought by plaintiff was located. *Id.* The court held that the Coast Guard was required to contact the lieutenant, reasoning that:

> Absent any indication that an inquiry of Lieutenant Nesel would be fruitless, either because he is no longer in the Coast Guard or because the storage of the logbook was controlled by other persons or by internal procedures, such an inquiry was required.

*Id.* The implication is not that the agency must contact former employees in order to comply with the FOIA but rather that, in most instances, it is not necessary for an agency to contact former employees to see if they know where records responsive to a FOIA request are located for the search to be considered adequate. Given the age of the investigation in this case and the prospect that some of these retired agents may be difficult to contact or deceased, it is unreasonable to impose this requirement on the agency. *See Schrecker v. United States Dep't of Justice,* 74 F.Supp.2d 26, 36 (D.D.C.1999). The Court therefore concludes that defendant's search was adequate and grants summary judgment for defendant on this issue.

### B. Withholding of the ELSUR Files

With respect to the ELSUR files, defendant found three ELSUR logs and eight 90–minute cassette tapes responsive to plaintiff's FOIA request. Defendant has withheld in its entirely one of the ELSUR logs—the transcript of an electronically monitored conversation—and has released the other two logs to the plaintiff in redacted form—the notes of the FBI agents monitoring the conversation. Of the audio cassettes, one has been copied and released to the plaintiff, while the other seven have been withheld in their entirely. The entirely withheld ELSUR log is the transcript of the conversation recorded on these seven withheld tapes. Defendant argues that these records may be released in redacted form or withheld in their entirety under Exemptions 2, 7(C), 7(D) and 7(F), and that all reasonably segregable information has been released to plaintiff. Plaintiff contends that defendant has improperly invoked these exemptions and that there may be additional segregable information that could be disclosed.

With respect to documents withheld under Exemptions 2, 7(C) and 7(D), plaintiff repeats the arguments previously made to and rejected by the Court in its August 30, 1999 Opinion. *See Blanton v. United States Department of Justice,* 63 F.Supp.2d at 43–49. Plaintiff provides no additional reasons or analysis why the Court should reconsider its earlier decision, and the Court therefore concludes that defendant properly has withheld information under these exemptions.

 In addition, defendant claims that it may withhold these records under Exemption 7(F) which protects from disclosure information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Portions of documents that contain identities of law enforcement personnel are properly withheld if disclosure would endanger the life or physical safety of such individuals. *See Moody v. DEA,* 592 F.Supp. 556, 558 (D.D.C.1984). Withheld identities also may include non-law enforcement persons who assist the government in its criminal investigation (such as persons in the Witness Protection Program). *See Durham v. Department of Justice,* 829 F.Supp. 428, 434 (D.D.C.1993). This exemption has been interpreted to afford "broad protection to the identities of individuals mentioned in law enforcement files." *Jimenez v. FBI,* 938 F.Supp. 21, 30–31 (D.D.C.1996). The same informa-

tion that is withheld under Exemption 7(C) may be withheld under Exemption 7(F) to protect against risk of physical injury or harassment. *See Epps v. Department of Justice,* 801 F.Supp. 787, 795 (D.D.C.1992); *see also Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir.1977).

Mr. Blanton contends that withholding records under this exemption is not justified because the bombing took place almost forty years ago and, at this point, the identities of many of the FBI agents involved with the investigation are known to him. He contends that defendant has provided no evidence that he ever took steps to carry out his threats against the FBI agents or non-law enforcement persons assisting in the case, nor has it shown that he currently intends to carry out threats against these people. Because of threats made by Mr. Blanton against FBI agents in the past, the nature of the crime, and Mr. Blanton's association with the Ku Klux Klan, defendant asserts that it is appropriate to withhold the names of both FBI agents and those who provided information with respect to the investigation. *See* Hodes Decl. ¶¶ 35–36. Defendant maintains that it has reasonably anticipated that both FBI personnel and non-law enforcement persons may become targets of physical harm if their identities are revealed to Mr. Blanton. *Id.*

██ The Court agrees that the disclosure of documents containing the identities of FBI agents and non-law enforcement persons assisting in the investigation could endanger their safety. The government now has proved beyond a reasonable doubt that plaintiff was involved in the 1963 bombing; he has been convicted of four counts of first degree murder. Even though plaintiff is incarcerated, his threats against persons responsible for his arrest and now his conviction make it possible that these individuals could be targets of physical harm should their identities be revealed.

██ Finally, plaintiff asserts that additional information contained in the ELSUR logs—namely the date, time and location of the conversation—are segregable and should be released to him. The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Kimberlin v. Department of Justice,* 139 F.3d 944, 949 (D.C.Cir.1998) (quoting *Mead Data Cent., Inc. v. U.S. Department of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977)). To withhold the entirety of a document, the agency must demonstrate that it cannot segregate the exempt material from the non-exempt and disclose as much as possible. *See Kimberlin v. Department of Justice,* 139 F.3d at 949–50.

██ The Court already has concluded that the identity of the source on the tape can properly be withheld from plaintiff under several FOIA exemptions. *See supra* at 86–87; *see also Blanton v. United States Department of Justice,* 63 F.Supp.2d at 43–49. Defendant explains that if the date, time and location of the recorded conversation was released, the identity of the source would be revealed because plaintiff would be able to identify the conversation in question. *See* Supp. Mot. at 10, Hodes Decl. ¶¶ 16–17. The Court concludes that the defendant has explained with sufficient specificity the reasons why this information cannot be released and agrees that there is no additional segregable, disclosable information. The Court therefore grants defendant's motion for summary judgment on this issue.

### C. Motion to Enforce

Plaintiff has filed a motion to enforce the Court's August 30, 1999 Opinion and Order. Plaintiff represents that he has not yet received the information regarding Gary Thomas Rowe and Elizabeth Cobbs which the Court determined was not exempt from release by defendant and this failure to release the records is a violation of the Court's order. He contends that defendant is obligated to provide immediately the information on these two individuals.

■ Although defendant does not oppose establishing a timetable for the release of the information, it contends that there is no present obligation to provide plaintiff with these records. When plaintiff filed a motion for partial reconsideration, and the Court granted it in part, treated defendant's opposition as a motion for summary judgment and allowed further briefing, the August 30, 1999 Order—previously a final order—was rendered non-final. *See Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1065 (7th Cir.1992). Defendant argues that because there was no final order in the case, defendant could not appeal the Court's August 30, 1999 decision if it chose to do so, and if the Court required defendant to release the documents prior to an appeal, defendant's right of appeal effectively would be rendered moot because the documents would be released and the damage to the agency done. Defendant therefore asks the Court to deny the motion to enforce and set a timetable for the release of documents which preserves its right of appeal.

Because all motions for summary judgment now have been finally resolved and there are no issues left to be decided, there will be a final order in this case from which any aggrieved party may appeal. Plaintiff's motion to enforce therefore is moot.

A separate Order and Judgment consistent with this Opinion will be issued this same day.

SO ORDERED.

### ORDER AND JUDGMENT

Upon consideration of the arguments of the parties and the entire record herein, and for the reasons set forth in the separate Opinion issued this same day, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED; it is

FURTHER ORDERED that plaintiff's motion to enforce is DENIED as moot; it is

FURTHER ORDERED that pursuant to this Court's Opinion and Order of August 30, 1999, defendant is ordered to provide to plaintiff within sixty (60) days materials concerning the identities of Gary Thomas Rowe and Elizabeth Cobbs, unless it files a notice of appeal from that Order; it is

FURTHER ORDERED that if defendant does file an appeal, it shall release to plaintiff the material required to be disclosed by the August 30, 1999 Opinion and Order within 45 days after any such appeal has been concluded, provided that defendant still is required by the court of appeals to release this information; it is

FURTHER ORDERED that for the reasons stated in this Court's Opinion and Order of August 30, 1999, its Order of June 2, 2000, denying the motion for partial reconsideration, and the Opinion issued this same day, JUDGMENT is entered for defendant; it is

FURTHER ORDERED that this case is DISMISSED from the docket of this Court; and it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL

JUDGMENT in this case. This is a final appealable order. *See* Rule 4(a), Fed. R.App. P.

SO ORDERED.